Wingate, S.
Every last will and testament of real or personal property, or both, shall be executed and attested in the following manner:
First. It shall be subscribed by the testator at the end of the will.
Second. Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses.
Third. The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament.
Fourth. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will at the request of the testator. 3 R. S. (5th ed.), 144, § 35.
Before a written will can be admitted to probate two, at least, of the subscribing witnesses must be produced and examined, if so many are within the state and competent and able to testify. Code, § 2618.
If all the subscribing witnesses to a written will are dead * * * the will may, nevertheless, be established upon proof of the handwriting of the testator and of the subscribing witnesses, and also of such other circumstances as would be sufficient to prove the will on the trial of an action. Code, § 2630.
It seems to me that the other circumstances here referred to are such as will warrant a finding by the court or a jury, that the other requirements of the statute above cited have been complied with.
The recitation of compliance with such requirements in the attestation clause to which the subscribing witnesses have subscribed their names is sufficient to authorize a find *614 ing that the provisions of the statute have been complied with in the making and execution of the will, and as to the competency of the testator. Matter of the Will of Pepoon, 91 N. Y., 255.
It would seem from the language of the Code, that proof of the handwriting of the testator and of the subscribing witnesses to a full attestation clause was regarded as the most important and conclusive fact on the trial of an issue as to a proper execution of a will. Matter of the Will of Cottrell, 95 N. Y., 329-339.
Such evidence, in connection with the other circumstancs tending to prove the due execution of a will, would seem within all the authorities to justify a decree admitting it to probate, even against the positive evidence of the subscribing witnesses. Id.
Indeed, no claim is made that this, instrument is not sufficiently proven as the will of Edward D. Hesdra to admit it to probate if the signature of the testator and subscribing witnesses are genuine.
The only issue upon the proofs is as to the genuineness of these signatures.
The determination of this issue concededly settles the question of probate; for if the signatures be genuine, there is proof to warrant and call for findings that there has been a compliance with the requirements of the statute.
Whatever objections may have been interposed to the probate of the will at the inception of this proceeding, the one as to the genuineness of the signatures and of the will is the only one that has been contested in putting in the testimony.
This question is accordingly the only one that it is necessary to consider.
I am of the opinion that this issue must be determined in favor of the proponent.
It seems to be conceded that the will was drafted by John V. Onderdonk, a subscribing witness, and now deceased.
Assuming then, as the contestants claim, that he is shown to have been a man unworthy of credibility; that his declarations and conduct were such as to show him to have been a man whose statements are unworthy of belief; and that he was a man who would, to serve his own purposes or personal interests, commit the forgeries claimed, and still, as we have seen, upon proper proofs, the will could be admitted to probate, even in direct opposition to the testimony. Matter of the Will of Cottrell (supra).
And assuming that the testimony of the witnesses as to the genuineness of the signatures is well balanced, standing independently of all other facts and circumstances, still I am of the opinion that the weight of proof upon the whole case is decidedly with the proponents.
In the first place we have the will itself in due form, and with apparently genuine signatures of the testator and *615 .attesting witnesses subscribed thereto. I say apparently .genuine signatures, because one can scarcely view them so -diverse in style and appearance, without being strongly impressed that they were written by different hands, presumably by the persons whose names they purport to be.
The instrument, upon the theory of its not being the will of Edward D. Hesdra, it seems upon the proofs, is either a fabrication in its entirety, or else as to the signatures alone, the dispositions of his estate being his own and in accordance with his desires.
In either event it is claimed that the fabrication is the work of John Y. Onderdonk.
Now, if the whole writing is the product of the hand and intellect of John Y. Onderdonk, it is, to say the least, highly improbable that he should not have at some point or in •some provision fallen into an error or line of conduct running counter to the testator’s purposes, which would have -clearly disclosed the falsity of the instrument.
For the most that appears from the proofs is an inconsistent or imprudent provision.
If the paper is a sham and false as a whole, had not Onderdonk a purpose in making its provisions as they appear, and if he had such purpose, what was it ? Was it gain ? He received no benefit under its provisions. Was he desirous of cutting off any person to whom he had an antipathy ? As it is conceded that the testator left no next of kin or heirs-at-law, unless it be Mrs. Tordoff, would not the law have accomplished the cutting off ?
If he had a friend among Hesdra’s acquaintances or those who would naturally be the subject of the testator’s bounty, who among the legatees hr devisees is such a friend ? And if any, why not have withheld some of the liberal charitable gifts, and made an additional bequest or devise to that friend ?
Was that friend Mrs. Tordoff, then why not have given her more, even the whole estate? Was she his enemy, then why not give her less, even to the extent of cutting her off entirely ?
It was contended that Onderdonk’s relations to Mrs. Tordoff changed from a friendly to a hostile feeling after the death of the testator, and that he stated in substance that if she did not act agreeably to his wishes “ there would be a wfill,” and that thereafter he carried out this expressed intimation of fabricating a will by the preparation of the instrument in question.
Now, if he were able and willing to do such a task, and was capable of bearing such malice as to commit so grave a -crime in gratification of ill feeling, would he have drawn a *616 will that gave this enemy and her children the bulk of the> estate ? Would he not have cut her off absolutely ?
Taken as a whole, do not the provisions of the will appear-from the testimony to be quite such as one would naturally expect in a testamentary disposition of his estate by this; old man ? He had received the estate from his wife. Is it not quite in accord with human action that we should find him giving her relatives some portion ? He had at least no near relatives, why then should he not be charitable to-the church of his religious faith ? It is but in accord with the promptings of old memories that he remembered his. foster brother. While those nearest to him received the most bountiful remembrance. •
On the second page of this instrument, which is blank,, there are lines lengthwise and transverse the page to prevent the addition or introduction of other provisions without, detection. Why this precaution, as Onderdonk thus cut, himself off from adding new provisions to accord with his; own changed or newly conceived wishes or desires ? Indeed, why any such lines at all when he could so readily bring; forth a new will ?
Is it argued that by thus doing Onderdonk made his; work the more clever and gave it the closer resemblance to-a genuine will? This argument cannot reasonably prevail. A man of Onderdonk’s age, lack of education and experience, especially in such matters, can scarcely be said from the evidence adduced to have been the exquisite imitator of signatures, and such a man of thought and fertile-brain, as to have prepared and executed a writing that, bears so many evidences of genuineness, and, yet bearing such, is nevertheless false.
I cannot believe that he was a man, even conceding that, he had the disposition and inclination so to do, who possessed the ability, skill and intellect, to conceive, create, execute and produce a writing such as this will, without leaving somewhere obvious errors or defects that would lead to a detection of its falsity when subjected to a scrutiny which this instrument has received.
If we take the theory that the only fabrication is of the' signatures, we then presumably start with a will prepared in accordance with the wishes of the testator; that instrument agreeable in its provisions to the testator, appears; upon its face to have been properly executed and attested. Why then should it be said that the testator had not signed it? Is there not a presumption that he would have done so? Is it probable that he would have had his will prepared some months previous to his death, and yet not have executed it? His mind must have been to dispose of his. estate by will, and such will bad been prepared.
*617 We find that will bearing the apparently genuine signatures of the testator and attesting witnesses. Is there not then a fair presumption that he carried out his intention as to disposition of his estate by the execution of the writing so as to make it effectual?
Of course it is conceded in the expression of the views, herein set forth that it is possible that either theory may be. true. Onderdonk may have forged the whole instrument, based upon information that he may have acquired as to Mr. Hesdra’s mind to make a will; the persons whom he-would be most likely to make the subjects of his bounty and the extent of their claim upon him. Again it may be true that the will had been prepared as directed by the testator and yet for some reason he might not have executed, it, and Onderdonk thereafter attached the signatures.
Still, against these possibilities stand the strongly preponderating probabilities, which the instrument and proofs-disclose.
Let us now notice the signatures and circumstances attendant upon the execution.
Onderdonk’s signature is conceded to be genuine, and the same is subscribed to an attestation clause that recites a compliance with all the requirements of the statute to constitute a valid execution of a will.
He signs in two places. Beneath his signature we find the name of Thomas Frothingham subscribed to the same attestation clause, and also in the second place.
How improbable that they are forgeries!
Why take upon himself the task of committing two where one only was necessary?
The signatures of Frothingham are in a markedly different handwriting from Onderdonk’s. The former is written in a decidedly heavier hand. If written by Onderdonk, is it not probable that the same hand would have put the-same pressure upon the pgn when writing his own?
And, if it occurred to Onderdonk for the purpose of making the closer imitation of Frothingham’s signature, or to give it a greater dissimilarity to his own, to write in heavier form, would he not most likely have carried out the same style of writing in adding the place of residence opposite, or at least an imitation of the heavier hand ?
■ Upon comparison of the Thomas Frothingham written upon the face of the six checks of Onderdonk by him (Prop. Ex. A, April, 1887), and the indorsement of the same by Frothingham himself, we bring the name as written by Onderdonk closely in place and time to the genuine signature, and the general difference is obvious. In particular the “r” and “ g” are radically different.
*618 Onderdonk forms his “r” like a “v” and Frothingham forms his “g” like a “q.”
There is a dissimilarity in the two signatures of Frothingham to the will, noticeably the disconnection of the final two letters “am” in the last.
It would seem that Onderdonk would scarcely have made such a distinction where he was imitating signatures so nearly in juxtaposition, and where the difference would present itself upon the most casual inspection, as the disconnection does not appear in the genuine signatures; while on the other hand this dissimilarity might readily occur in the writing of a signature by the same individual.
It has been given in testimony, and is in accordance with human observation and experience, that the same person will write his signature differently at different times and under different circumstances.
A different pen; ink of different shade, quality, cleanliness, or consistency; the position of the writer, whether standing, sitting or otherwise; whether the writer be in a state of composure or excitement, physically or mentally, and many other circumstances, any one of which being present at one writing and absent at another, may cause a variance in the writing and its appearance.
An inspection of the signature of the testator, when we remember that he was an old man of feeble body and unsteady nerves, seems to carry conviction of its genuineness. The tremulousness of the aged hand is impressed upon the signature in such forms by nature’s feebleness that it seems next to an impossibility to imitate it. It is very doubtful whether Onderdonk could thus well have imitated the testator’s unsteady hand, or if he could, that he would have been thoughtful enough to have done so.
A circumstance noticeable about this signature, and not without importance, and which appears in about every admittedly genuine signature, is the period which follows the initial letters “E” and “D,” and which is absent in each instance where Onderdonk wrote the name. True, it may be answered that Onderdonk was thus more closely counterfeiting tibe genuine signature, but it is highly improbable that he would have been so extremely careful and thoughtful as to have added the period where it should be to accord with the genuine signature, and have omitted it in writing the name elsewhere.
In the word “ Hesdra” the “e” is omitted, or so formed as to constitute a part of the “H.” This seems to have been a feature of Hesdra’s genuine signature. In the writing of his name by others the “e” always appears.
Now, in a forgery or imitation, Onderdonk would scarcely have been so exact as to omit this letter, or make it a part of the “ H.” He would most probably not have noticed the peculiarity. I cannot concede that there is evidence showing Onderdonk to be a man of so remarkable skill and intel *619 lect, and upon the whole evidence I am convinced that the ■signatures of the testator and witnesses are genuine.
The contestants contend that the failure of John V. Onderdonk to present the will for probate, and his testimony in the proceedings for administration, to the import that Mr. Hesdra left no will, and his declarations to the same effect, bear strongly against the genuineness of this instrument.
But when it is recalled that Onderdonk had relations with or interests with Mrs. Tordoff, and a part of Hesdra’s propeity, which might be served by withholding the will ■and making the declarations above "mentioned, it is not at all improbable that he was the man to do so, and actually did so to serve his own interests and purposes.
I look upon the suppression of the will, the withholding of it from probate, both by Onderdonk and the now proponent, as matter merely of suspicion, in view of all the circumstances, which simply call for greater vigilance in determining the question of the genuineness of the instrument and the signatures thereto. These suspicious circumstances, however, are insufficient to meet the case of the proponents, for, as we have seen, a will may be established even against the testimony of the attesting witnesses.
It seems to me that had this will been a forgery, and when Onderdonk saw that it could no longer serve his own purposes, and especially after giving his testimony in the proceeding for administration, he "would have destroyed it rather than have left it as evidence of his forgery, and as an imputation upon himself of having committed perjury.
It is also claimed by the contestants that the appointment ■of the proponent, Onderdonk, as executor, with the peculiar or unusual provision as to the time and manner of" closing up the estate, militates against the genuineness of the will. This might be said with great force, if the issue were made ■of undue influence, and that the signature of the testator had been obtained through fraud.
But when the prime issue is raised, and the probate made to turn upon the question of genuineness or falsity of the signatures, then this contention loses its force. For if it be conceded that John V. Onderdonk procured his son’s appointment as executor, with the power over the estate specified in the will, to serve his son or his son’s interests, and accomplished the same by fraud or undue influence, the answer is that no such issue has been raised or litigated upon the trial; and if the genuineness of the signatures be established, then the will must be admitted to probate, even though the provisions of the will may not accord with the testator’s wishes.
*620 The same may be said of any or all provisions inconsistent with the testator’s desires or intentions.
As to the testimony of both the Mrs. Perrys, I see no. reason for discrediting it, but I am of the impression that the conversation very probably related to some other prepared will which Mr. Hesdra failed to sign, or else Onderdonk thus expressed himself to them, so as to reach Mrs. Tordoff without himself having a personal interview with, her.
And it may be that the paper, if any, shown the witness, Theodore F. Odell, was the same one referred to in the conversation with the Mrs. Perrys and with Mrs. Odell, and not the paper in question. I think Odell is mistaken as to the paper in question being the one he saw at the time and under the circumstances, and in the condition stated.
A decree may be accordingly entered admitting the will to probate, with costs to the proponents, to be paid out of the estate.
Barnard. P. J.
The evidence is volumnious, but the-issue finally depends upon the genuineness of the signature of the testator and the witness Frothingham.
Edward D. Hesdra, a resident of Rockland county, died, in July, 1884. The proposed will was made September 11,. 1883. The will was drawn by one John Y. Onderdonk, and he is one of the witnesses. The will so entirely accords with the surroundings of the testator that no reasonable hypotheses can be entertained that the will was the invention of John Y. Onderdonk, and this view of the caséis met by proof that the will was drawn in accordance with the directions of testator, but that it was never signed by him. Proof is given tending to show that John Y. Onderdonk so stated the fact to be. The proof is so entirely unnatural that no great weight can be placed upon it.
Assuming a man bad enough to forge a will it is quite incredible that he would have acknowledged the fact. The evidence of his daughter and her husband is also subject, to criticism, because it appears that they were not friendly with John Y. Onderdonk, and had a suit pending against, him, in which serious charges of dishonesty were made, both against John Y. Onderdonk and his son, the proponent, of the will, and the executor named therein. There isl, something to be accounted for which is more troublesome than that which bears upon the alleged forgery of the will. John Y. Onderdonk was an old man with little business. He had been a builder in his early years. He had been and was friendly with testator until his death; he survived the testator over two years. No steps were taken to prove the *621 will, although he knew that he was dead, and he repeatedly said there was no will, and on one examination upon a contest for administrator in July, 1885, John Y. Onderdonk testified that there was no will or so testified that no other inference was possible if he had been a truthful witness. What explanation is there for this ? It must be stated in the outset that John Y. Onderdonk takes nothing under the will. His son is executor, and has given him ten years to close up the estate, and that he should give no bonds.
These facts were not sufficient inducements to have John Y. Onderdonk act toward proving the will in his life-time, and he lived until February, 1887. Notwithstanding all arguments based upon the evidence given on the trial the decision that the will is genuine, seemed to be well supported. The will must have been the work of the testator, so far as xespects the terms.
No one, much less an inexperienced man could have invented a will to fit so entirely the family and creed of testator. The signature of Frothingham is proven by members of his family. He was a small dealer in painter’s supplies, who had his store near Onderdonk’s, and with whom Onderdonk was friendly. Frothingham is dead.
The witness is one who would be likely to be called as such by Onderdonk and testator. There is no motive for the forgery by Onderdonk. If it was done to injure anyone the injury does not appear. A Mrs. Wordoff sought to be administratrix upon the basis of intestacy. If the design was to injure her, she and her family get a large share in the estate under the will. Finally, the will and the signature, both of testator and Frothingham are produced, and from an examination of them it is evident that the signatures are genuinue as to both of these parties. They are easy, natural and entirely resemble the admittedly genuine signatures. The proof of the genuiness of the, signatures is so strong that no case is made out for issues to be sent to a jury. The most probable explanation of the difficulties of this case seems to be that John V. Onderdonk had some motive for a failure to produce and prove the will. That is not disclosed by the evidence, but his evasive and guarded answers on the administration proceeding seem to warrant such an inference. He was guardian of Mrs. Wordoff’s children. If the will was executed it can be proved against the testimony of the witnesses. Matter of Cottrell, 95 N. Y., 329.
The admission of evidence of declarations of John Y. Onderdonk, to the effect that testator had made a will in reply to such admissions that he had not, if erroneous, have no sufficient effect in the case to reverse the judgment for *622 that reason. The decree of the surrogate should therefore, be affirmed with costs to all parties out of the estate.
Dykman, J., concurs.